UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

CHARLES A. SPRADLIN,

      Plaintiff,

      v.

JONATHAN SALCEDO,

      Defendant.

CIVIL ACTION NO.

2:18-CV-00037-RWS

## **O R D E R**

This case comes before the Court on Defendant Jonathan Salcedo's Motion to Dismiss [18] and Plaintiff Charles A. Spradlin's Motion for Leave to File Amended Complaint [23]. After reviewing the record, the Court enters the following Order.

### **Background**

This is a civil rights case. On March 26, 2016, Plaintiff Charles A. Spradlin was arrested in his driveway by Defendant Jonathan Salcedo, a Georgia State Trooper. Plaintiff's car was subsequently searched and towed. Plaintiff alleges that Officer Salcedo arrested him without probable cause and in retaliation for questioning the purpose of the traffic stop. Plaintiff further alleges that Officer Salcedo unlawfully searched and towed his vehicle. Plaintiff sues Officer Salcedo

in his individual capacity for violations of his Fourth, Fifth, and Eighth Amendment rights. He also seeks to add a retaliatory arrest claim against Officer Salcedo for violation of the First Amendment.

## I. Allegations in the First Amended Complaint

### A. Events Leading up to Plaintiff's Arrest

At approximately 2:14 p.m. on March 26, 2016, Plaintiff received a call from his neighbor, Jan Turner O'Kelly, whose son had recently been killed in a police altercation. (1st Am. Compl., Dkt. [17] ¶ 7.) She notified Plaintiff that officers had set up a checkpoint in their neighborhood. (Id.) After receiving the call, Plaintiff drove his vehicle south on Carver Mill Road toward a hill to gain a vantage point of the surrounding area. (Id. ¶ 8.) He then activated his turn signals before reaching the crest of the hill, knowing that a driveway was located there. (Id.) Plaintiff slowly turned into the driveway, which was located about 715 feet from the checkpoint area. (Id.) Before turning into the driveway, Plaintiff did not see the checkpoint. (Id.)

According to Plaintiff, his intent was to drive to the crest of the hill, observe the checkpoint, and then return home. (Id.) From the driveway, Plaintiff saw two patrol cars, but it was unclear if the officers were conducting a checkpoint. (Id. ¶ 9.) After stopping briefly, he carefully backed out of the driveway and began to

drive back toward his own driveway, located about 1,200 feet away. (Id.) Plaintiff did not commit any traffic violations or make any reckless, evasive, or suspicious driving maneuvers. (Id.) As he approached his driveway, Officer Salcedo's patrol car came toward him quickly with the sirens activated and lights flashing. (Id. ¶ 10.) Plaintiff pulled into his driveway, clear of any oncoming traffic. (Id.) He stepped out of the car while keeping his hands clearly visible and stood calmly next to his vehicle. (Id.)

### B.     Plaintiff's Arrest

After arriving in Plaintiff's driveway, Officer Salcedo approached him and asked why he had turned around at the sight of the checkpoint. (1st Am. Compl., Dkt. [17] ¶ 11.) Officer Salcedo also asked Plaintiff if he had a driver's license. (Id.) Plaintiff, pointing to his house, explained that he was returning home after checking out the police presence at his neighbor's request. (Id.) He confirmed that he had a driver's license, too, and asked for the basis of Officer Salcedo's stop. (Id.) Officer Salcedo became visibly agitated and told Plaintiff to turn around and put his hands behind his back. (Id.) Plaintiff complied with Officer Salcedo's order. (Id.)

Officer Salcedo placed handcuffs on Plaintiff and asked if he had any weapons. (Id. ¶ 12.) Plaintiff said that he had a firearm stowed in the vehicle's

center console.  (Id.)  Officer Salcedo then reached into the rear pocket of

Plaintiff's pants and retrieved his wallet.  (Id. ¶ 13.)  Plaintiff audibly objected to

the search of his person.  (Id.)

Another officer arrived at the scene.  (Id.)  The second officer held

Plaintiff's upper arm while Officer Salcedo looked through the wallet and removed

Plaintiff's driver's license.  (Id.)

C.     Search and Impoundment of Plaintiff's Vehicle

Plaintiff was escorted to Officer Salcedo's patrol car and locked in the

backseat.  (1st Am. Compl., Dkt. [17] ¶ 14.)  From there, Plaintiff observed Officer

Salcedo and the second officer searching his vehicle, including the glove

compartment, center console, rear cargo area, and inside a backpack.  (Id. ¶ 15.)

At one point during the search, Officer Salcedo returned to the patrol car, and

Plaintiff audibly objected to the search of his vehicle.  (Id. ¶ 16.)  Officer Salcedo

replied, "It's not a search, it's an inventory subject to tow."  (Id.)  Plaintiff's wife

then came out of the house and spoke with the officers.  (Id. ¶ 17.)  Mrs. Spradlin

asked to drive Plaintiff's vehicle up the driveway to the home, but Officer Salcedo

replied that he had decided to have the vehicle towed.  (Id. ¶ 18.)  Officer Salcedo

gave Mrs. Spradlin several personal items from the vehicle, including the firearm.

(Id.)

D.     Events Following the Arrest

At approximately 4:00 p.m., the tow truck arrived to remove Plaintiff's vehicle from his driveway. (1st Am. Compl., Dkt. [17] ¶ 19.) Plaintiff was then transported to the Pickens County Jail for booking on three charges: failure to display license, obstruction of justice, and having unsafe tires. (Id.) He was released around 7:45 p.m. after utilizing a bail bondsman. (Id. ¶ 20.) Plaintiff could not retrieve his vehicle until two days later after paying $200 cash to the tow company. (Id.)

During a preliminary hearing on April 14, 2016, a judge dismissed the obstruction of justice charge because there was "not in fact evidence to sustain that a reasonable person would believe that a crime was committed[.]" (Id. ¶ 21.) He also dismissed the unsafe tire charge because there was "never any testimony that [the tires] were below 2/32 of an inch[.]" (Id. (alteration in original). The prosecution later dropped the failure to display license charge. (Id.)

Plaintiff filed this case on March 22, 2018. In his first Amended Complaint [17], he sets forth three counts: violation of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 (Count I); punitive damages (Count II); and attorney's fees pursuant to 42 U.S.C. § 1988 (Count III).

## II.    Allegations in the Proposed Amended Complaint

On December 6, 2018, Plaintiff filed a motion requesting leave to file a second amended complaint, (Dkt. [23]). The factual allegations in the proposed amended complaint are identical to those set forth above. However, Plaintiff seeks to add a retaliatory arrest claim stemming from Officer Salcedo's purported violation of his First Amendment rights. Plaintiff contends that he was arrested by Officer Salcedo in retaliation for inquiring about the basis of the traffic stop. (2d Am. Compl., Dkt. [23-1] ¶¶ 30–38.)

## Discussion

## I. Legal Standard – Motion to Amend

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). "Generally, the Court will only deny a request for leave to amend a complaint where there is evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party by virtue of allowing the amendment, futility of amendment,

etc.'" <u>Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation</u>, 175

F.R.D. 349, 350 (N.D. Ga. 1997) (quoting <u>Foman</u>, 371 U.S. at 182)

## II. Legal Standard – Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a

"short and plain statement of the claim showing that the pleader is entitled to

relief." While this pleading standard does not require "detailed factual

allegations," "labels and conclusions" or "a formulaic recitation of the elements of

a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)

(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). In order to

withstand a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u>

(quoting <u>Twombly</u>, 550 U.S. at 570). A complaint is plausible on its face when the

plaintiff pleads factual content necessary for the court to draw the reasonable

inference that the defendant is liable for the conduct alleged. <u>Id.</u>

At the motion to dismiss stage, "all-well pleaded facts are accepted as true,

and the reasonable inferences therefrom are construed in the light most favorable

to the plaintiff." <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir.

1999). However, the same does not apply to legal conclusions set forth in the

complaint. <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260 (11th Cir. 2009)

(citing Iqbal, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.

## III.    Analysis

Officer Salcedo moves to dismiss Plaintiff's complaint because it fails to state a claim upon which relief can be granted.  Officer Salcedo also opposes Plaintiff's motion for leave to amend on the basis of futility.

As to the Motion to Dismiss, Officer Salcedo first argues that each of Plaintiff's claims must be dismissed because Plaintiff fails to show a violation of the Fourth Amendment.  Distilled to its essence, Officer Salcedo's argument is that: (a) the traffic stop was constitutionally proper; (b) Officer Salcedo had probable cause to arrest and jail Plaintiff; (c) Officer Salcedo was permitted to search Plaintiff after arresting him; and (d) Plaintiff's vehicle was properly inventoried and towed.  Alternatively, Officer Salcedo argues that even if no probable cause existed, he is nevertheless entitled to qualified immunity from Plaintiff's § 1983 claims.

With respect to Plaintiff's proposed retaliatory arrest claim, Officer Salcedo similarly argues that the amendment would be futile because Plaintiff cannot show

the absence of probable cause.  Officer Salcedo then argues that even absent

probable cause, the claim would ultimately be barred by qualified immunity.  The

Court will address each of these arguments in turn.

> A.    Fourth Amendment Claim

Plaintiff asserts a claim against Officer Salcedo under 42 U.S.C. § 1983 for

violating his rights under the Fourth Amendment.[1]  Section 1983 says:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  In order to prevail on a claim under § 1983, then, a plaintiff

must show two things: "(1) that the act or omission deprived plaintiff of a right,

privilege or immunity secured by the Constitution or laws of the United States, and

(2) that the act or omission was done by a person acting under color of law."

Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th

Cir. 1993) (quoting Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996–97

---

[1] Plaintiff's complaint alleges that Officer Salcedo violated his rights under the Fifth and
Eighth Amendments as well.  However, Plaintiff has withdrawn those allegations, (Resp.
to MTD, Dkt. [22] at 19), as he must, since his "Deprivation of Civil Rights" claim
implicates only the Fourth Amendment.

(11th Cir. 1990)).  Officer Salcedo does not dispute that he was acting under color of state law, so the Court's focus is solely on whether Officer Salcedo's conduct violated Plaintiff's constitutional rights.

### 1. *Constitutional Violation*

Again, Plaintiff alleges that Officer Salcedo deprived him of his rights under the Fourth Amendment.  Specifically, Plaintiff challenges four aspects of his interaction with Officer Salcedo: (1) the checkpoint and initial traffic stop; (2) Plaintiff's arrest; (3) Officer Salcedo's search of the vehicle; and (4) the impoundment of Plaintiff's vehicle.  If a violation occurred at any stage of the interaction, Plaintiff's claim must move forward.[2]

And for that reason the Court need not decide, at this stage, whether the vehicle checkpoint itself—as opposed to the alleged misconduct of Officer Salcedo in manning the checkpoint—violated Plaintiff's constitutional rights.  Nor is it necessary to assess the lawfulness of the initial stop.  Even assuming the checkpoint was proper, Mich. Dep't of State Police v. Sitz, 496 U.S. 444, 447 (1990), and that Officer Salcedo had a "reasonable suspicion" to stop Plaintiff,

---

[2]  That is because unlike other complaints which might break allegedly unlawful police activity into several counts—say, for unlawful stop, false arrest, etc.—Plaintiff's complaint includes only one cause of action under the Fourth Amendment: Count I.  So, if Plaintiff has sufficiently alleged a Fourth Amendment violation at any point in his interaction with Officer Salcedo, then Count I will move forward.

United States v. Hardy, 855 F.2d 753, 755, 757 (11th Cir. 1988) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)), the Court finds that Plaintiff has sufficiently alleged that Officer Salcedo's subsequent actions violated Plaintiff's rights under the Fourth Amendment.

"Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003); see Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007) (noting that the reasonableness of an arrest is determined by the presence or absence of probable cause). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Skop, 485 F.3d at 1137.

Applying that standard at this stage, the Court finds that Officer Salcedo lacked probable cause to arrest Plaintiff for failure to display license or obstruction of justice.[3] The offense of failure to display license is found in the Official Code

---

[3] Officer Salcedo's Motion to Dismiss and the subsequent briefs do not meaningfully address the "unsafe tires" charge. Instead, Officer Salcedo rests solely on the other two charges. He states: "To seize Plaintiff, Trooper Salcedo needed only to have cause to believe Plaintiff had committed one offense." (Def. MTD Subst. Br., Dkt. [20-1] at 10 (citing Devenpeck v. Alford, 543 U.S. 146, 153 (2004); Lee v. Ferraro, 284 F.3d 1188, 1195–96 (11th Cir. 2002))).

of Georgia: "Every licensee shall display his or her license upon the demand of a law enforcement officer." O.C.G.A. § 40-5-29(b). Additionally, the Code defines obstruction of justice as "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties . . . ." O.C.G.A. § 16-10-24(a). Taking the facts in the Amended Complaint as true, no reasonable officer in Officer Salcedo's position could have believed that probable cause existed to arrest Plaintiff for failure to display his license or obstruction of justice.

According to the complaint, Officer Salcedo approached Plaintiff and asked (1) why he turned around after seeing the roadblock and (2) whether he possessed his driver's license. (1st Am. Compl., Dkt. [17] ¶ 11.) Plaintiff replied to the first question by explaining that "he was merely returning to his home after checking out the police presence at his neighbor's request" and indicated that he was currently in his driveway by pointing up to his house. (Id.) He replied to Officer Salcedo's second question by confirming that "he indeed had his driver's license." (Id.) Plaintiff then asked for the legal basis of the stop of his vehicle. (Id.) After becoming "agitated," Officer Salcedo asked Plaintiff to turn around and put his hands behind his back. (Id.) Plaintiff complied, and Officer Salcedo handcuffed him then removed Plaintiff's wallet from his back pocket to retrieve his driver's

license.  (Id.¶¶ 11–13.)  This brief interaction, in no way, indicates that Plaintiff ever failed to produce his license upon demand or that he otherwise obstructed Officer Salcedo.

Yet, Officer Salcedo argues that Plaintiff "essentially admitted to these offenses in his allegations."  (Def. MTD Subst. Br., Dkt. [20-1] at 10).  That is so, Officer Salcedo insists, because Plaintiff questioned the basis for the stop rather than immediately producing his license.

Based on the allegations in the complaint, however, Officer Salcedo did not *demand* that Plaintiff hand over his license.  Instead, he "demanded to know *if* Plaintiff *possessed* a driver's license."  (1st Am. Compl., Dkt. [17] ¶ 11 (emphasis added).)  Plaintiff said that he did.  (Id.)  But Officer Salcedo never made clear that Plaintiff should actually produce the license.  Compare O.C.G.A. § 40-5-29(b) (requiring—unambiguously—a driver to display his license on "demand").  Thus, under the facts alleged by Plaintiff, Officer Salcedo did not have probable cause to arrest Plaintiff for failing to produce his license.

Nor was there probable cause to arrest Plaintiff for obstruction of justice.  It is true that Plaintiff questioned the legal basis of the stop rather than immediately producing his license, but such behavior is insufficient to constitute obstruction under Georgia law.  "Although Georgia courts have held that words alone can

constitute obstruction," the general rule is that there must be "words plus something more." WBY, Inc. v. DeKalb Cty., 695 F. App'x 486, 492–93 (11th Cir. 2017) (per curium) (quoting Harris v. State, 493 314 Ga. App. 816 (2012) (reviewing Georgia case law and finding "no case upholding an obstruction conviction based solely upon a defendant's act of speaking to, remonstrating with, or even criticizing an officer during the performance of his duties")).

So, in WBY, Inc. for example, the Eleventh Circuit found no arguable probable cause for obstruction of justice under O.C.G.A. § 16-10-24(a) where the plaintiff "briefly hesitated to obey [the officer's] ambiguous instructions . . . after he had already stopped at the officer's request" and was arrested "while attempting to inform the officer that he was the valet [at the adult entertainment club being raided] and to inquire as to what the officers were doing." 695 F. App'x at 492. Similarly here, Plaintiff failed to immediately produce his driver's license after an ambiguous question from Officer Salcedo; instead, he told Officer Salcedo that he possessed a license and tried to explain the reason for his prior conduct, then asked for the basis of the stop. Such behavior, like that in WBY, Inc., "did not even amount to criticism or challenge of [Officer Salcedo]," but rather was an "attempt[] to disclose information" and to understand the officer's behavior. Id. at 493. Plaintiff's statements, then—without more—"cannot establish arguable probable

cause to arrest." Id.; see also Skop, 485 F.3d at 1139 ("When, as under Skop's version of the facts, an individual . . . simply reiterates or attempts to clarify a perfectly reasonable question directed to the officer, there is neither probable cause nor arguable probable cause to arrest for obstruction."); Davis v. Williams, 451 F.3d 759, 767 (11th Cir. 2006) ("Neither an owner's simple inquiry as to why officers are present on his property nor a person's attempt to bring a dangerous situation to the officer's attention can be construed as obstruction of justice or disorderly conduct. Nor can a citizen be precluded by the threat of arrest from asking to speak to an officer's superior or from asking for an officer's badge number. Those inquiries likewise do not constitute obstruction of justice . . . .").

Accordingly, based on the facts in the Amended Complaint, Officer Salcedo did not have probable cause to arrest Plaintiff for failing to display his license or disorderly conduct. And by extension, under those same facts, Officer Salcedo also lacked probable cause to search Plaintiff's vehicle:[4] "A search of an individual

_____

[4] Even if the arrest were lawful, without a warrant or other exception to the warrant requirement, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Arizona v. Gant, 556 U.S. 332, 351 (2009). Here, Plaintiff was already handcuffed and locked in the backseat of the police car when Officer Salcedo began to search the vehicle. (1st Am. Compl., Dkt. [17] ¶ 15.) Thus, Plaintiff was not within reaching distance of anything in the vehicle during the search. Further, Plaintiff was arrested for failure to display license, obstruction of justice, and having unsafe tires. (Id.

or a vehicle is improper if the initial seizure of the person or vehicle was unlawful." United States v. Strickland, 902 F.2d 937, 940 (1990)).  Similarly, Officer Salcedo does not offer any justification for his choice to inventory and tow Plaintiff's car.  The policy rationale behind allowing an officer to conduct an inventory search incident to an arrest lies with ensuring the safety of the officer and the property itself.  Colorado v. Bertine, 479 U.S. 367, 372–73 (1987).  According to the Amended Complaint, however, Plaintiff's vehicle was parked "40 feet off of Carver Mill Road in his own personal driveway, clear of any oncoming traffic" and Plaintiff's wife was ready and willing to take possession of the vehicle, (Am. Compl. Dkt. [17] ¶¶ 10, 18), so there were no safety interests implicated.  Nor does Officer Salcedo assert that he chose to inventory Plaintiff's vehicle because he was following standard procedure.  Sammons v. Taylor, 967 F.2d 1533, 1543 (11th Cir. 1992) ("Even if an arrestee's vehicle is not impeding traffic or otherwise presenting a hazard, a law enforcement officer may impound the vehicle, so long as the decision to impound is made on the basis of standard criteria and on the basis of something other than suspicion of evidence of criminal activity."

¶ 19.)  It would be wholly unreasonable for Officer Salcedo to hope to find evidence of any of those charges in the interior of the vehicle, especially since he already had Plaintiff's driver's license in his possession when he began the search.

(internal quotations omitted)). Thus, Plaintiff has alleged sufficient facts to support a claim that Officer Salcedo violated his Fourth Amendment rights.

### 2. *Qualified Immunity*

Officer Salcedo raises the defense of qualified immunity. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To claim qualified immunity, a defendant must first show he was performing a discretionary function. Moreno v. Turner, 572 F. App'x 852, 855 (11th Cir. 2014). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." Edwards v. Shanley, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting Lewis, 561 F.3d at 1291). A plaintiff demonstrates that qualified immunity does not apply by showing: "(1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged violation." Moreno, 572 F. App'x at 855.

Here, Plaintiff does not dispute that Officer Salcedo's actions were discretionary, so the burden shifts to Plaintiff to show that Officer Salcedo is not

entitled to qualified immunity.  But, having found Plaintiff's allegations sufficient to state a constitutional violation,[5] there is only one remaining inquiry: whether the right violated was clearly established at the time.  The Court finds that it was: "It is clearly established that an arrest made without probable cause violates the Fourth Amendment."  Redd v. City of Enterprise, 140 F.3d 1378, 1382 (11th Cir. 1998).  Thus, Officer Salcedo is not—at this stage of the proceedings—entitled to qualified immunity.

### B.    Proposed First Amendment Claim

Plaintiff seeks leave to amend his complaint a second time to add a retaliatory arrest claim.  Officer Salcedo argues that leave should be denied because the proposed claim is futile.  Officer Salcedo bases this argument—like those made in support of his motion to dismiss—on the belief that his actions were supported by probable cause and, alternatively, that he is entitled to qualified

---

[5] The Court notes that while the standard for a false arrest claim itself is probable cause, "[t]o receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause."  Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010).  "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'"  Id.  (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004)).  This makes no difference, however, because for the same reasons described in Part III.A.1, supra, based on the allegations in the complaint, no reasonable officer in Officer Salcedo's position could have believed that probable cause existed to arrest Plaintiff for failure to display license or obstruction of justice.

immunity.  The Court has already found that Officer Salcedo lacked probable cause to arrest Plaintiff.  Under the qualified immunity analysis, however, Plaintiff still bears the burden to show that his First Amendment rights were violated and that the violation was clearly established at the time in question.

### 1.    *Constitutional Violation*

To state a claim of retaliation for exercising rights under the First Amendment, Plaintiff must allege facts establishing (1) "his speech or act was constitutionally protected;" (2) he "suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech;" and (3) "there is a causal connection between the retaliatory actions and the adverse effect on speech."  Castle v. Appalachian Tech. Coll., 631 F.3d 1194, 1197 (11th Cir. 2011); Hartman v. Moor, 547 U.S. 250, 261 (2006).

As to the first prong, Plaintiff alleges that his question to Officer Salcedo about the legal basis behind the traffic stop amounts to protected speech.  The Court agrees.  It has long been established that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."  City of Houston, Tex. v. Hill, 482 U.S. 451, 452 (1987).  Indeed, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation

from a police state." Id.  And where, as here, the speech in question does not even rise to the level of a "verbal criticism" or "challenge," but is instead, a perfectly reasonable question about the basis for a traffic stop, it cannot serve as a valid basis for arrest.  Skop, 485 F.3d at 1139; see also Davis, 451 F.3d at (explaining that "a citizen [cannot] be precluded by the threat of arrest from asking to speak to an officer's superior or from asking for an officer's badge number").  Therefore, the Court finds that Plaintiff's conduct was protected under the First Amendment.

The second prong—that the plaintiff "suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech," Castle, 631 F.3d at 1197—is also easily met.  There is no question that causing an individual to be arrested adversely affects the speech in question.  See Andrews v. Scott, 729 F. App'x 804, 812 (11th Cir. 2018) ("[E]ven the threat of arrest would likely deter a person of ordinary firmness from the exercise of First Amendment rights, at least to some degree.").  Accordingly, the Court moves to the final part of the analysis.

Under the third prong, Plaintiff must allege that there is a causal connection between the retaliatory actions and the adverse effect on speech.  This requires Plaintiff to show that his protected speech was the "but-for" cause of the arrest—in

other words, that Officer Salcedo would not have made the arrest if Plaintiff had not engaged in his protected speech. Hartman, 547 U.S. at 261.

Plaintiff clearly alleges in the proposed claim that he was arrested because of his statements to Officer Salcedo. This allegation is buttressed by the "close temporal proximity" between Plaintiff's speech and the arrest, Akins v. Fulton Cty., 420 F.3d 1293, 1305 (11th Cir. 2005), as well as the lack of probable cause, Hartman, 547 U.S. at 261 ("Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive."). Accordingly, Plaintiff has sufficiently alleged that Officer Salcedo arrested him in retaliation for protected speech in violation of Plaintiff's First Amendment Right.

### 2.  *Clearly Established*

Finally, Plaintiff's right to be free from retaliatory arrest was clearly established at the time in question. The Eleventh Circuit "and the Supreme Court have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005); see also Hill, 482 U.S. at 462–63 ("The freedom of

individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."). Thus, Officer Salcedo is not entitled to qualified immunity at this stage of the proceedings. And because Plaintiff's retaliatory arrest claim would not be barred by probable cause or qualified immunity, the proposed amendments would not be futile.

## Conclusion

For the reasons discussed above, Defendant's Motion to Dismiss [18] is **DENIED**, except as to Plaintiff's withdrawn allegations related to purported violations of his Fifth and Eighth Amendment rights; the Motion to Dismiss is **GRANTED** to the extent Plaintiff's "Deprivation of Civil Rights" claim seeks to implicate any Amendment other than the Fourth. Plaintiff's Motion for Leave to File a Second Amended Complaint [23] is **GRANTED**.

**SO ORDERED** this 12th day of July, 2019.

_____
**RICHARD W. STORY**
United States District Judge